IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUSTIN L. GARCIA,

     Plaintiff,

v.                                 No. 1:16-cv-01141 WJ-KBM

MICHAEL GEIER, individually,
and in his official capacity;
KEITH RIESBERG, individually,
and in his official capacity;
RIO RANCHO POLICE DEPARTMENT;
and GOVERNING BODY FOR THE CITY
OF RIO RANCHO.

     Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS MICHAEL GEIER'S AND KEITH RIESBERG'S MOTION TO DISMISS

THIS MATTER comes before the Court on Defendants Michael Geier's and Keith Riesberg's Motion to Dismiss (**Doc. 12**) filed January 19, 2017. Having reviewed the relevant pleadings and the applicable law, the Court finds Defendants' Motion is well-taken, and is therefore **GRANTED.**

## BACKGROUND

Plaintiff Justin L. Garcia is a certified police officer employed by the Defendant City of Rio Rancho (the "City"). At times relevant to Plaintiff's Complaint, Defendant Geier was the Chief of Police for the Rio Rancho Police Department (the "Department") and Defendant Riesberg was the Manager for the City. Plaintiff was a member of and official for, the Rio Rancho Police and Communications Association, an affiliated chapter of the New Mexico Coalition of Public Safety Officers ("the Union").

This lawsuit arises out Plaintiff's internal affairs ("IA") investigation by the City regarding possible misconduct.  Plaintiff attended a Union meeting on March 31, 2016 while off duty and as a private citizen.  His attendance at the meeting was unrelated to his job duties.  At the meeting, Plaintiff and other Union members discussed "myriad topics, including, but not limited to, memorandums of understanding between the Department and the Union, sergeant testing, career development, Department participation and representation at out-of-state or police unity events, officer pay and benefits, and employee morale."  Doc. 4 at ¶ 30.  Plaintiff alleges that according to Defendant Geier, Plaintiff's statements at the Union meeting for which he was retaliated against were related to workplace retaliation, employee discipline, Department attendance or representation at special events, career development for Bargaining Unit members, Departmental budget issues, and the membership's discussion about holding a vote of no confidence against Defendant Geier or his administration.  *Id.* at ¶ 64. Defendant Geier claimed that Plaintiff's statements at the Union meeting impaired the ability, reputation, and efficiency of Defendant Geier and the Department because Plaintiff's statements were made in the wrong venue and for the wrong purpose.

Six days after the Union meeting, Plaintiff was placed on paid administrative leave. He subsequently filed a grievance pursuant to the Collective Bargaining Agreement between the Union and the Department regarding the IA investigation.  The IA investigation did not result in any findings against Plaintiff, and he was ultimately restored to his law enforcement position about three months later.

As a result of being placed on administrative assignment, Plaintiff alleges he was temporarily deprived of certain job benefits.  Specifically, Plaintiff's schedule changed from four 10-hour days per week, to five 8-hour days per week; his work days changed from Wednesday

through Saturday, with 3-days off each week, to Monday through Friday, with 2-days off each week; he was removed from Traffic Division assignment and placed on an administrative assignment; was required to surrender his badge, radio, weapons, and service vehicles; and he was prohibited from performing law enforcement duties. *Id.* ¶ 32.  He claims he was forced to ride his bike to and from work, and was required to use accrued leave time to attend personal appointments that were previously scheduled on his normal days off. *Id.* ¶ 35.  Plaintiff claims the paid administrative assignment and IA investigation violated his constitutional rights to free speech, due process, and equal protection under the New Mexico and federal constitutions. Plaintiff also alleges the IA investigation into his possible misconduct violated the Peace Officer Employer-Employee Relations Act ("POEERA"), and the Public Employees Bargaining Act ("PEBA").

Defendants Geier and Riesberg filed a Motion to Dismiss (Doc. 12) on January 19, 2017. Plaintiff filed a Response (Doc. 17) on February 2, 2017.  Defendants filed a Reply (Doc. 19) on February 16, 2017.

## LEGAL STANDARD

### I.      Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a case for failure to state a claim upon which relief can be granted. Rule 8(a)(2), in turn, requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true

of legal conclusions. *See id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## II.      Qualified Immunity

"[G]overnment officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quotation omitted).  The Tenth Circuit employs a two-part test to analyze qualified immunity:  "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).  It is within this Court's discretion to determine which prong of the qualified immunity test should be addressed first.  *Brown*, 662 F.3d at 1164; *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  If a plaintiff fails to demonstrate that a defendant's conduct violated the law, the court need not determine whether the law was clearly established. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).

## DISCUSSION

Defendants Geier and Riesberg argue they are entitled to qualified immunity on Plaintiff's federal constitutional claims and Plaintiff's state law claims fail to state a claim upon which relief may be granted.  Specifically, Plaintiff did not suffer an adverse employment action

that would give rise to a First Amendment violation, nor did he suffer a deprivation of property that would give rise to a Fourteenth Amendment violation. Similarly, there was no equal protection violation because Plaintiff, as a City employee, cannot state a "class of one" equal protection claim as a matter of law. Finally, Defendants argue Plaintiff's state law claims cannot proceed, as a matter of law, because 42 U.S.C. § 1983 does not apply to them. The Court considers each argument in turn.

## I.      First Amendment Retaliation

Defendants argue they are entitled to qualified immunity on Plaintiff's First Amendment retaliation claim because Plaintiff failed to allege with specificity the speech that he claims was protected. Moreover, the topics of his speech are not matters of public concern, and Plaintiff did not suffer an adverse employment action.

First, to assert a First Amendment claim, a plaintiff must identify the speech or expressive right which resulted in the alleged retaliation. Defendants argue Plaintiff has not alleged any specific statements that he made that he believes he was retaliated against for making. Plaintiff claims he made statements at the Union meeting, but he does not allege the content of any specific statements. Rather, he lists general topics that were discussed.

Second, Defendants argue Plaintiff failed to allege topics of speech that are matters of public concern. Plaintiff did not plead what he actually said, and the categories of speech he identifies in the Complaint are not afforded protection under the First Amendment because they concern the working environment, career development, officer pay and benefits, the quality of the administration, and Plaintiff's own employment interests. Mere disputes over personnel matters or working conditions do not implicate matters of public concern sufficient to trigger the First Amendment. *See Morris v. City of Colorado Springs*, 666 F.3d 654, 661 (10th Cir. 2012).

Finally, Defendants contend that Plaintiff has not met his burden to adequately plead that he suffered an adverse employment action.  Simply being placed on paid administrative assignment pending an investigation does not constitute an adverse employment action.  Moreover, relieving a public employee of accoutrements is not actionable.  *See Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cty.*, 587 F.3d 1223, 1236 (10th Cir. 2009).  A public employer can violate an employee's First Amendment rights by subjecting the employee to repercussions that would not be actionable under Title VII, but the alleged repercussions must be multiple and compounding rather than isolated incidents.  *Baca v. Sklar*, 398 F.3d 1210, 1220–21 (10th Cir. 2005); *Couch*, 587 F.3d at 1237–38.  Here, Defendants argue, Plaintiff merely complains of being placed on paid leave pending the IA investigation, which does not constitute an adverse employment action.

Plaintiff spends the vast majority of the Response arguing that his speech at the Union meeting was not made pursuant to his official duties, and was made while he was off duty, and therefore must have been a matter of public concern.  He relies upon a number of out-of-jurisdiction cases to support his proposition that when a public employee speaks in his capacity as a union member, his speech is protected.  *See, e.g., Baumann v. D.C.*, 744 F. Supp. 2d 216, 224 (D.D.C. 2010).  In *Baumann*, the defendants argued the plaintiff's speech was unprotected because it was made in his official capacity rather than his personal capacity as a citizen.  *Id.*  The court rejected the defendants' position, and found the plaintiff was speaking as a citizen on matters of public concern.  *Id.*  Critically in *Baumann* and unlike the present case, the defendants did not argue that the plaintiff's speech was not a matter of public concern.  *See id.* at n. 2.

Plaintiff states that other jurisdictions have held that personnel grievances raised by unions may be matters of public concern.[1] Plaintiff cites *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1057–58 (9th Cir. 2013) (emphasis in original), where the Ninth Circuit explained that "precedent instructs that *collective* personnel grievances raised by unions may be matters of public concern."   However, in this case and unlike in *Ellins*, there are no allegations the grievances at issue were collective union grievances.

In the Reply, Defendants point out that Plaintiff has failed to allege that any specific speech was a matter of public concern.  Defendants also emphasize that paid administrative leave is not an adverse employment action.  Defendants do not disagree with Plaintiff's position that he was not speaking at the Union meeting pursuant to his official duties.  Rather, Defendants state this distinction is immaterial because Plaintiff has nonetheless failed to allege that in speaking as a private citizen, his speech touched on matters of public concern.

## A.  Matter of Public Concern

The Court agrees with Defendants that Plaintiff failed to identify the specific speech resulting in the alleged retaliation, so his First Amendment retaliation claim fails.  "In analyzing a public employee's First Amendment retaliation claim, the Supreme Court has instructed that we must first decide whether the speech at issue touches on a matter of public concern and, if so, we must then proceed to ask whether the employee's interest in commenting on the issue "outweighs" the interest of the state as employer. *Casey v. W. Las Vegas Independent School District*, 473 F.3d 1323, 1327 (10th Cir. 2007); *See also Hulen*, 322 F.3d at 1237.  "If the speech

---

[1] Plaintiff also cites two other cases from other circuits, *Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir. 2006), and *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 750 (5th Cir. 1993).  Both cases are inapposite.  *Boddie* dealt with a freedom of association claim, which is not before the Court.  The court in *Fuerst* held a police officer is not a policy-making official and thus cannot be terminated for political reasons.

is not a matter of public concern, then the speech is unprotected and the inquiry ends." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007). The parties here do not dispute that Plaintiff was not speaking pursuant to his official duties, rather this case hinges on whether Plaintiff's speech concerned a matter of public concern. The Court finds it did not.

"[I]f an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern." *Brammer-Hoelter*, 492 F.3d at 1202. "[S]peech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern." *Morris*, 666 F.3d at 661 (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996)). On the other hand, "[s]peech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of [state] officials, in terms of content, clearly concerns matters of public import." *Hulen*, 322 F.3d at 1237 (quoting *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988) (alteration in original)).

"In deciding whether an employee's speech touches on a matter of public concern, or constitutes a personal grievance, courts look at the content, form and context of a given statement, as revealed by the whole record. They also consider the motive of the speaker—was the speech calculated to redress personal grievances or [did it have] a broader public purpose [?]" *Hulen*, 322 F.3d at 1237 (internal citations omitted) (alterations in original); *See also Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224–25 (10th Cir. 2000); *See also Conaway*, 853 F.2d at 795 (quoting *Connick v. Myers,* 461 U.S. 138, 146 (1983) ("court must first consider whether the speech related to a matter of public concern, meaning the speech can be 'fairly considered as relating to any matter of political, social or other concern to the community'")).

Plaintiff does not specify any particular speech that he claims formed the basis for the alleged retaliation, and he does not allege he had any public purpose in speaking out at the Union meeting.  Instead, Plaintiff simply argues that certain categories of speech he made at the Union meeting are protected under the First Amendment.  Even considering those categories, and taking the allegations as true, Plaintiff has not sufficiently alleged any protectable speech regarding matters of public concern that would invoke the First Amendment's protection. Plaintiff spends virtually his entire Response reiterating that he was speaking at the Union meeting as a private citizen and not as a government employee, but this is not a position that Defendants disagree with in any regard.  Plaintiff simply fails to allege any specific speech that involves matters of public concern.

This case contrasts with *Hulen*, where the speech concerned "plagiarism and copyright violations, emotional abuse of students, abuse and harassment of staff, misuse of state funds, receipt of kickbacks from a publisher in return for adopting textbooks, and a claimed inadequate investigation of the allegations and alleged retaliation against those who made the allegations." *Hulen*, 322 F.3d at 1238.  This type of speech touched on matters of public concern because it bore on potentially illegal conduct.  Likewise, in *Brammer-Hoelter*, the public teachers' speech concerned grievances about speech restrictions, school charter renewal, and school elections. 492 F.3d at 1206.  The speech took place over numerous meetings, many of which were attended by members of the public.  *See id.* at 1199.  The Tenth Circuit held these topics were matters of public concern because the allegations of speech restrictions concerned potential illegal conduct, and the charter renewal and school election were of particular importance to the school community and parents.  *See id.*

Regarding the topics that did not touch on matters of public concern in *Brammer-Hoelter*, the plaintiff's complaints about staffing levels, dissatisfaction with supervisors' performance, and workload, the court explained that "[s]tatements revealing official impropriety usually involve matters of public concern. Conversely, speech that simply airs grievances of a purely personal nature typically does not involve matters of public concern." *Id.* at 1205–06 (internal citations and quotation marks omitted).  Speech regarding grievances about internal departmental affairs, disputes over employment terms, and workplace frustration are not matters of public concern, while speech concerning public elections and the candidates are matters of public concern. *Id.*  In sum, matters that are "internal in scope and personal in nature" are not matters of public concern. *Id.* (quoting *Bunger v. Univ. of Okla.*, 95 F.3d 987, 992 (10th Cir. 1996)). Because the employees' speech concerned their duties as teachers and internal personnel disputes, it was not a matter of public concern. *See id.* at 1199.

Here, Plaintiff has not alleged any specific statements he made at the Union meeting, so the Court is unable to examine the content and form of his speech. *See Conaway*, 853 F.2d at 796 ("whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record").  However, based on the "myriad categories" of speech that Plaintiff identifies in the Complaint, the Court has examined the context of the speech and finds it concerned Mr. Garcia's personal grievances about his job, and therefore did not touch upon a matter of public concern.  The topics of the speech concerned memorandums of understanding between the Department and the Union, sergeant testing, career development, Department participation and representation at out-of-state or police unity events, officer pay and benefits, and employee morale.  These topics do not concern corruption, impropriety, or malfeasance on the part of City officials. *See Brown v. Town*

*of LaBarge, WY*, 97 F. App'x 216, 227 (10th Cir. 2004) (city employee's allegations of misuse of employer credit card and harassment were matters of public concern because they disclosed corruption and illegal conduct and they were topics of public debate and local newspaper article); *Dill v. City of Edmond, Okl.*, 155 F.3d 1193, 1202 (10th Cir. 1998) (public concern prong met because speech dealt with belief that exculpatory evidence existed and was being withheld by police officers in murder investigation).

Moreover, taking the allegations as true, there is no allegation the speech was calculated to disclose such misconduct.  Rather, the speech deals with personal grievances about officer job duties, pay and benefits, and personnel matters.  *See Brammer-Hoelter*, 492 F.3d at 1205.  These topics are relevant only to City personnel and involve essentially private, internal matters.  *See Conaway*, 853 F.2d at 796.  There are no allegations Plaintiff was attempting to expose what he perceived to be improper or illegal conduct.  *See id.* (quoting *Connick*, 461 U.S. at 148) (speech touched on public concern when plaintiff "reported to his superiors facts which appeared to involve special favors for government officials, illegal payoffs, and circumstances of released substandard electrical work which, he felt, posed danger to public life, health, and safety.  In all three incidents, [plaintiff] sought 'to bring to light actual or potential wrongdoing or breach of public trust on the part of a public officer.'").  Here, in contrast, Plaintiff and his colleagues discussed officer pay, promotions, and other conditions of their employment at the Union meeting.  "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices." *Connick*, 461 U.S., at 146. Accordingly, Plaintiff's First Amendment retaliation claim fails because Plaintiff has not alleged any specific speech involving matters of public concern.

### B.  Adverse Employment Action

The Court finds that even if Plaintiff had sufficiently alleged speech on matters of public concern, being placed on paid administrative leave for a short period of time pending an IA investigation does not amount to an adverse employment action.  Plaintiff bears "the burden of establishing both a detrimental employment decision (adverse employment action) and 'causation—that is, that the constitutionally protected speech was a substantial motivating factor in the employer's decision to adversely alter the employee's conditions of employment.'" *Couch*, 587 F.3d at 1236 (quoting *Maestas v. Segura*, 416 F.3d 1182, 1188 & n. 5 (10th Cir. 2005)). Plaintiff has not plausibly alleged an adverse employment action because he complains only of being placed on paid administrative leave during the pendency of the IA investigation. Furthermore, the temporary loss of his job accoutrements does not amount to an adverse employment action.  Plaintiff was not terminated and was in fact restored to his law enforcement position after the IA investigation did not result in any findings against him.

Although "First Amendment protection extends beyond employer conduct amounting to termination of employment or the substantial equivalent," the employer's action must deter a reasonable person from exercising his First Amendment rights in order to constitute an adverse action. *Couch*, 587 F.3d at 1237–38.  This district and the Tenth circuit have previously found that paid administrative leave does not constitute an adverse employment action. *Juarez v. Utah*, 263 F. App'x 726, 731 (10th Cir. 2008); *Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1117 (D.N.M. 2011); *Otero v. N.M. Cors. Dep't*, 640 F.Supp.2d 1346, 1355 (D.N.M. 2009).[2]  In this

---

[2] The weight of authority from other jurisdictions follows the reasoning that being on paid leave is not an adverse employment action.  *See Alaniz v. Zamora–Quezada*, 591 F.3d 761, 773 (5th Cir. 2009); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004); *Swearnigen-El v. Cook County Sheriff's Dept.*, 602 F.3d 852, 860 (7th Cir. 2010). *But see Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013) (holding that paid administrative leave could be adverse employment action in context of threats of physical violence and threats of criminal charges by superiors). There are no such allegations here of threats by Plaintiff's supervisors.

case, there is no allegation Plaintiff's pay was reduced.   He was simply placed in an administrative position pending the outcome of the IA investigation.   Although his vehicle privileges were temporarily revoked and his schedule was somewhat altered,[3] these changes were temporary and there is no allegation they deviated from standard City procedures. Plaintiff's badge and weapon were temporarily revoked, but only because he had no need for these items while in his temporary administrative role.  Finally, the Court agrees with Defendants that there is no merit to Plaintiff's contention that he was subjected to humiliation because he had to ride his bike to work.  Plaintiff chose to ride his bike to work, and there are no allegations in the Complaint that  Defendants revoked the vehicle privilege to force Plaintiff to ride his bike to work.   In short, there are no allegations that show Plaintiff suffered an adverse employment action while on temporary, fully-paid administrative leave.

## II.        Procedural Due Process

Defendants contend they are entitled to qualified immunity on Plaintiff's due process claim because the Complaint does not allege the deprivation of a property interest.   Plaintiff states he has a protectable property interest in his employment and his law enforcement certification.  Doc. 4 at ¶¶ 115–16.  However, Defendants point out that Plaintiff does not allege he was deprived of his employment or his law enforcement certification.  In fact, Plaintiff was restored to his position after the paid administrative assignment and did not lose his certification. Therefore, there was no deprivation of property that could give rise to a due process claim.

Even if there was a loss of property here, Defendants maintain it was *de minimus* and did not implicate due process concerns.  "Not all property interests deserve constitutional protection. Courts have long recognized that *de minimus* property interests do not trigger procedural due process protections." *Dill*, 155 F.3d at 1207 (quoting *Goss v. Lopez*, 419 U.S. 565, 575 (1975)).

---

[3] Although Plaintiff's schedule was altered, his total weekly hours remained the same.  *See* Doc. 4 at ¶ 32.

In *Dill*, the plaintiff was a police officer and his schedule was changed so that he no longer had Sundays off, when he used to have Sundays off because of his seniority within the department. *Id.* at 1206–07.  The plaintiff was also transferred from detective to patrol division.  The Tenth Circuit held the plaintiff's change in schedule and assignment did not trigger procedural due process when it merely inconvenienced him and defeated his expectations in having Sundays off. *Id.* at 1207.

Plaintiff does not respond to Defendant's arguments regarding Plaintiff's Fourteenth Amendment claim, so the Court concludes Plaintiff has either abandoned the claim or consents to Defendants' arguments in this regard.  *See* D.N.M.LR-Civ. 7.1(b) and 7.3(a).  Plaintiff merely states that he "will be put to his burden of proof concerning the entirety of his claims, including his claims for violations of due process."  Doc. 17 at 19.  He argues that he "is only required to demonstrate a prima facie showing that he has stated a claim that is entitled to relief–and, not that he is able to prove each element of his case at its inception."  *Id.* at 20.  While these statements are not necessarily incorrect, at this early pleading stage Plaintiff does have the burden to allege facts that, accepted as true, state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678.  Plaintiff has not done so with regards to his remaining constitutional claims against these particular Defendants.

"To determine whether a plaintiff was denied procedural due process, we engage in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).  A procedural due process claim must be based on a showing that the state deprived the plaintiff of a protected property or

liberty interest.  *Lybrook v. The Members of the Farmington Municipal Schools Board of Education*, 232 F.3d 1334, 1341 (10th Cir. 2000).

Plaintiff's due process claim is premised on his allegations that Defendants failed to provide him with due process of law in relation to his adverse employment action and IA investigation by failing to provide him with notice of and details regarding the investigation; and failing to provide him with the identity of the complainant against him, among other related grievances.  *See* Doc. 4 at ¶ 128.  Plaintiff alleges a protectable property interest in his employment with the Department and his law enforcement certification, but he does not allege those interests were taken away.  In fact, under Plaintiff's own allegations, he was restored to his law enforcement position after the IA investigation did not result in any findings against him. Plaintiff also filed a grievance pursuant to the collective bargaining agreement between the Department and the Union.

Moreover, if there was any deprivation, under Plaintiff's allegations it was *de minimus*. *See Dill*, 155 F.3d at 1207.  Plaintiff was placed on paid administrative leave on April 6, 2016. A little over a month later, on May 12, 2016, the Department concluded the IA investigation and did not sustain any findings against Plaintiff for any misconduct.  The Department continued a supplemental investigation into Plaintiff's alleged misconduct until July 14, 2016, when the Department finally notified Plaintiff that the Department's investigation against him was closed and the allegations were not sustained. The change in Plaintiff's schedule, while perhaps inconvenient, does not arise to a constitutional violation.

Finally, though neither party addressed this point in the briefing, there are no plausible allegations of what these particular individual Defendants did to allegedly deprive Plaintiff of his procedural due process rights, thus providing another basis for dismissal.  "Personal liability

under § 1983 must be based on personal involvement in the alleged constitutional violation." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quoting *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997) (footnote omitted)).  The Court carefully examined the Complaint, and there are simply no allegations of what any particular Defendant did to effectuate the alleged constitutional deprivations.   As the Tenth Circuit explained in *Brown*, "it is particularly important in a § 1983 case brought against a number of government actors sued in their individual capacity ... that the complaint make clear exactly who is alleged to have done what to whom ... as distinguished from collective allegations."  *Id.* at 1165.  The procedural due process claim here fails for the additional reason that Plaintiff has not alleged what the individual Defendants did to deprive Plaintiff of his property interests in his position and his law enforcement certification.

### III.     Equal Protection

Next, Defendants argue they are entitled to qualified immunity on Plaintiff's equal protection claim.  Plaintiff complains that an investigator used a different method of recording non-management witness statements from the method that was used in recording management witness statements during the IA investigation.  Defendants contend Plaintiff's equal protection claim fails because Plaintiff does not allege that this different recording approach prejudiced him in any meaningful way, and he does not allege a different recording process was used for investigating other officers.

Moreover, Defendants maintain that an equal protection claim cannot be based on animosity of a supervisor toward a public employee instead of membership in a protected class. In other words, public employees cannot assert "class of one" equal protection claims.  *See Pignanelli v. Pueblo Sch. Dist. No. 60*, 540 F.3d 1213, 1220 (10th Cir. 2008) ("A public

employee-turned-plaintiff must be a member of an identifiable class to bring an equal protection claim.").

Other than providing a brief summary of Defendants arguments regarding the equal protection claim, Plaintiff makes no meaningful response to those arguments, so the Court finds Plaintiff has either abandoned his equal protection claim, or he concedes to Defendants' arguments.  For example, Plaintiff does not address Defendants' well-supported argument that a public employee cannot as a matter of law state an equal protection claim based on a "class of one."

The Equal Protection Clause governs claims of arbitrary government classification. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602 (2008).  When similarly situated individuals are treated differently, the Equal Protection Clause requires "a rational reason for the difference . . . Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a 'rational basis for the difference in treatment.'  *Id.* (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  In *Engquist* the Supreme Court held a "class of one" equal protection theory, where a plaintiff is irrationally singled out and treated differently, does not apply in the public employment arena.  *Id.* at 598; *See also Pignanelli*, 540 F.3d at 1218 ("[C]lear Supreme Court precedent precludes a public employee from making out an equal protection claim on the sole basis that she was treated differently by her employer.").

In this case, Plaintiff makes no allegation that the City treated him differently from others similarly situated on account of his membership in a certain class.  Plaintiff does not allege that a different disciplinary or recording process was used for his IA investigation into potential misconduct than was used for other officers' investigations.  Rather, he claims only that

"Defendants failed to provide Plaintiff with equal protection of laws . . . by using different or disparate methods of recording the IA interviews of management employees versus the method used to record Plaintiff and four additional members of the Bargaining Unit during their IA interviews."  Doc. 4 at ¶ 118.  To the extent Plaintiff attempts to assert a "class of one" equal protection claim, the claim fails as a matter of law.  *See Engquist*, 553 U.S. at 602.

## IV.      State Law Claims

Lastly, Defendants argue Plaintiff improperly seeks to bring a number of state law claims under 42 U.S.C. § 1983.  These claims fail as a matter of law because to bring a claim under § 1983, Plaintiff must allege deprivation of a *federal* right by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

Plaintiff responds only that the Court has supplemental jurisdiction over the state law claims because they are related to his First Amendment retaliation claim and thus part of the same case and controversy as the § 1983 claims.  He makes no attempt to address Defendants' argument that a § 1983 claim is viable only when it alleges violations of federal rights rather than state rights.

Counts 2 and 4 through 6 of the Complaint seek damages under § 1983 for alleged violations of the New Mexico Constitution or New Mexico statutes.  *See* Doc. 4 at ¶¶ 104–111; 123–154.  The Court dismisses these counts because § 1983 does not apply to Plaintiff's state claims.  Moreover, the Court has already found Plaintiff's First Amendment and Fourteenth Amendment claims fail as a matter of law, therefore the state law claims cannot remain in this action.

18

Accordingly, the Court grants Defendants' Motion to Dismiss (**Doc. 12**).  Plaintiffs' claims against Defendants Michael Geier and Keith Riesberg are **DISMISSED WITH PREJUDICE**.


     **SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE